UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SHIRLEY GAYLE CICHOWSKI,**

       **Plaintiff,**              **CIVIL ACTION NO. 11-10284**

  vs.

                                  **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED, Defendant's Motion For Summary Judgment (docket no. 11) be GRANTED, and the instant complaint be dismissed.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed a Title II application for a period of disability and Disability Insurance Benefits on July 21, 2006, alleging disability since April 1, 1997. (TR 96-98). The Social Security Administration denied benefits. (TR 56-59). On June 16, 2009 Plaintiff appeared with counsel in Flint, Michigan and testified via video conference with the Administrative Law Judge (ALJ) Ayrie Moore presiding over the hearing in Chicago, Illinois. (TR 13). Vocational Expert (VE) Michelle M. Peters also testified at the hearing. (TR 13). In a July 20, 2009 decision, the ALJ found that Plaintiff was not entitled to disability benefits because she remained capable of performing a significant number of jobs existing in the national economy through the date last insured. (TR 13-23). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the

instant action for judicial review. (TR 1-3). The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.  PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

#### A.  Plaintiff's Testimony

Plaintiff was forty-four years old as of her alleged onset of disability and forty-nine years old as of March 31, 2002, the date last insured. (TR 26, 28). She possesses a General Equivalency Diploma (GED) and completed training to be a certified nursing assistant. (TR 29). Plaintiff testified that she underwent multiple surgeries to repair tears to her right rotator cuff between 1995 and 1997. (TR 31, 37-38). She had a heart attack and stent placement and underwent cardiac catherizations sometime after 2000. (TR 32). She testified that due to pain in her shoulder she had to prop her arm with a pillow and shift position every twenty-five minutes while sitting. (TR 40). She reported that she could stand approximately thirty to forty-five minutes and walk only thirty minutes before experiencing shoulder pain. (TR 41). She reported that she was limited to lifting objects weighing less than a gallon of milk. (TR 41). She could not reach overhead or open a bottle. (TR 41). She testified that she could button clothes, hold a telephone for only a short period of time, and grasp or grip objects provided they were not too heavy. (TR 40-41). Plaintiff testified that she experienced depression and she took naps during the day because her medication made her sleepy. (TR 41, 43). She claims she had concentration and memory deficits that limited her ability to read or watch television. Plaintiff has a driver's license and could do limited driving before her date last insured. (TR 29). She claims that her husband did the yard work, household chores, and assisted with her personal care. (TR 43-44).

**B.     Medical Evidence**

**1.     Medical Evidence Before Plaintiff's Date Last Insured**

In May 1996 Dr. Anthony de Bari examined Plaintiff relative to her complaints of right shoulder pain. (TR 204-05). At the time of her visit Plaintiff's medical history included a prior right shoulder arthroscopy and repair of a ruptured capsule. (TR 205). Dr. de Bari's physical examination showed that Plaintiff had full range of motion of the shoulder with anterior tenderness. He referred Plaintiff to Dr. Steven A. Petersen for evaluation.

In September 1996 Dr. Petersen performed a diagnostic arthroscopy and anterior acromioplasty of Plaintiff's right shoulder. (TR 187-90). Dr. Petersen noted that Plaintiff had excellent range of motion with elevation measuring 165 degrees external rotation with the arm out to one side measuring 45 degrees, and internal rotation of the arm at 90 degrees of abduction. (TR 188). Dr. Petersen diagnosed Plaintiff with impingement tendinitis of the right shoulder and a degenerative superior labral tear. (TR 187). He recommended that Plaintiff wear a sling for comfort and begin physical therapy. (TR 189-90).

In May 1997 Dr. Petersen evaluated Plaintiff and diagnosed her with long thoracic nerve palsy with scapular winging of the right shoulder. As a result Dr. Petersen performed a pectoralis major tendon transfer to the scapula. (TR 183-86). Following the procedure Plaintiff was admitted to the hospital for incision and drainage of an infected surgical wound. (TR 167-69, 176-78). Dr. Petersen observed that Plaintiff had remarkable improvement of her pre-operative shoulder pain with marked (80%) relief of her shoulder symptoms and improved elevation of her shoulder without winging of her scapula. (TR 176). He noted that Plaintiff had right shoulder range of motion of 100 degrees on forward flexion, 40 degrees external flexion, and T12 on internal rotation. (TR 168).

Plaintiff presented to Dr. de Bari with complaints of left shoulder pain in March 2001 following a July 2000 injury. (TR 203). Clinical examination revealed that she had limited range of motion in the left shoulder with severe pain and difficulty holding up her arm. (TR 203, 236). Dr. de Bari diagnosed Plaintiff with a rotator cuff tear of the left shoulder with adhesive capsulitis. (TR 203). Plaintiff was admitted to the hospital for repair of the tear with manipulation and acromioplasty of the left shoulder. (TR 226, 230). In April 2001 Plaintiff returned to Dr. de Bari with complaints of post-operative pain. (TR 202). Dr. de Bari noted that Plaintiff was doing pendulum exercises and was able to complete thirty circles at a time. He referred Plaintiff to physical therapy for strengthening exercises.

Plaintiff continued to complain of left shoulder pain with loss of motion, so in May 2001 Dr. de Bari performed a shoulder manipulation and injection under anesthesia. (TR 224). During that procedure Dr. de Bari was able to obtain full range of motion of the shoulder. In June 2001 Plaintiff informed Dr. de Bari that she was doing quite well, reporting a ninety percent improvement since the May 2001 manipulation with some residual tenderness of her shoulder. (TR 201). In March 2002, just prior to the date last insured, Plaintiff was evaluated by a certified nurse practitioner for bilateral shoulder pain with restricted range of motion. (TR 543). Plaintiff declined physical therapy and was referred back to Dr de Bari for an evaluation.

In 2000 Plaintiff experienced an acute coronary syndrome with stent placement and myocardial infarction. (TR 235, 271, 290). She experienced shortness of breath during an operation in March 2001 and was believed to have mild decompensated congestive heart failure, ischemic disease, and hypertension with probable underlying obstructive lung disease. (TR 226, 233-34, 237-40, 252-55).

In September 2001 Plaintiff was evaluated by Dr. Umesh Badami for complaints of chest tightness and shortness of breath. (TR 271). An EKG revealed sinus bradycardia. Dr. Badami noted that there was no evidence of congestive heart failure and recommended a coronary angiography. (TR 271-72). In November 2001 Dr. Badami evaluated Plaintiff for exertional angina and shortness of breath and found no sign of overt congestive heart failure. (TR 270). A stress test performed on November 21, 2001 showed no stress induced ischemia and normal left ventricular systolic function. (TR 282).

**2.     Medical Evidence After Date Last Insured**

The Court will consider evidence pertaining to treatment after the date last insured only to the extent it illuminates Plaintiff's health prior to the date last insured. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). In September 2002 Dr. de Bari evaluated Plaintiff for complaints of recurrent left shoulder pain that had gradually increased in the year following her May 2001 shoulder manipulation. (TR 197-98). Dr. de Bari noted that Plaintiff showed positive impingement signs and tenderness over the left shoulder with limited range of motion over the ninety degree level. Plaintiff denied excessive fatigue. She had full range of motion of the cervical spine. Dr. de Bari performed an acromioplasty and biceps tenodesis of the left shoulder. (TR 218-19, 222-23). A post-operative examination revealed that Plaintiff had good range of motion with abduction and forward flexion approximately ninety degrees. (TR 196). Two months after the surgery Plaintiff reported that she was doing "quite well." (TR 195).

Between December 2002 and May 2003 Plaintiff was again complaining of pain in her shoulders. (TR 191-94). An EMG of the left upper extremity conducted in February 2003 was unremarkable. (TR 246). An MRI of the shoulders revealed bilateral acromioplasty, evidence of

bilateral supraspinatus tendinopathy with no evidence of rotator cuff tear and a small amount of fluid within the left subacromial bursa, consistent with bursitis. (TR 327, 329-30).

In June 2003 Dr. Pervez Yusaf evaluated Plaintiff for complaints of bilateral shoulder pain. (TR 322). Dr. Yusaf observed weakness of external rotation in both shoulders and a positive impingement test. Overhead abduction of both shoulders was limited. Despite this Dr. Yusaf concluded that functionally Plaintiff was "doing fine." (TR 322). In August 2003 Dr. Yusaf performed a diagnostic arthroscopy of the glenohumeral joint, arthroscopic decompression with acrominoplasty and lysis of the scar-down coracoacromial ligament around the edges of the remnants of the acromion, lysis of adhesions and subtotal bursectomy of the subdeltoid bursa, and a resection of the outer end of the clavicle. (TR 335). In September 2003 Plaintiff reported that her pain was better. (TR 324). Dr. Yusaf observed that Plaintiff's overhead abduction was fine with very little assist. Internal and external rotation were full. Plaintiff's ninety degree abduction was not painful. (TR 324).

On September 12, 2002 Dr. Michael Slavin evaluated Plaintiff's cardiac status and diagnosed her with bradycardia secondary to her beta blocker, well-controlled hypertension, and coronary artery disease without any present ischemia. (TR 220). In January 2003 Plaintiff underwent a stress test and cardiac catherization. (TR 268, 280). The stress test suggested ischemia with normal left ventricular function. (TR 280).

On November 17, 2006 Dr. David Krohn completed a Psychiatric Review Technique on behalf of the state disability determination service (DDS) wherein he concluded that there was insufficient evidence of psychiatric impairment prior to the date last insured. (TR 686-99). On December 5, 2006 Dr. John Siddall of the state DDS completed a Physical Residual Functional

6

Capacity Assessment of Plaintiff. (TR 702-09). Dr. Siddall found that prior to the date last insured Plaintiff was limited to occasional lifting and carrying of twenty pounds; frequent lifting and carrying of ten pounds; able to stand, walk, or sit six hours in an eight hour workday; limited push/pull in the upper extremities; occasional balancing, stooping, kneeling, crouching, crawling, and climbing, but no climbing of ladders, ropes, or scaffolds. (TR 703-04). Dr. Siddall concluded that Plaintiff may engage in occasional push/pull with either upper extremity, and may frequently reach to shoulder level or below with the exception of no overhead reaching. (TR 705). As for environmental limitations, Dr. Siddall opined that Plaintiff should avoid concentrated exposure to extreme heat or cold, wetness, humidity, vibration, and fumes, and avoid all exposure to environmental hazards such as heights and machinery. (TR 706).

## IV.     VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past relevant work as a certified nurse's aide was low-end semiskilled work with a specific vocational preparation (SVP) code of 3 and medium to heavy physical demands. (TR 47). The ALJ asked the VE to testify whether jobs were available up to March 31, 2002 for an individual with Plaintiff's age, education, and work experience who was limited to light work, frequent reaching at shoulder level or below with no overhead reaching, occasional push/pull bilaterally, who could perform occasional postural activities but no climbing of ropes, ladders or scaffolds, who must avoid all exposure to work hazards and concentrated exposure to most everything in the environmental limitations category except noise, including extreme temperatures and pulmonary irritants. (TR 48). The VE testified that such an individual could not perform the past work as a certified nursing aide but could perform unskilled, light work as an information clerk, office clerk, or inspector, which includes approximately 23,500 jobs in the

7

State of Michigan. (TR 48-49). If the individual was limited to sedentary work with the same limitations, the individual could perform unskilled, sedentary work as an order clerk, information clerk, or inspector, comprising 16,800 statewide jobs. (TR 49-50). These hypotheticals allowed for one to two absences per month. (TR 50).

The VE testified that the need to take unpredicted naps or to be consistently off task twenty percent of the time because of concentration would be work preclusive. (TR 50-51). The VE further testified that being off task ten percent of the time due to concentration, and requiring unskilled work that could be learned in thirty days or less would not be work preclusive. (TR 51-52).

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 1997 through her date last insured of March 31, 2002, and suffers from the severe combination of impairments of muscle ligament disorder, status post multiple shoulder surgeries, and ischemic heart disease, she did not have an impairment or combination of impairments through the date last insured that met or equaled the Listing of Impairments. (TR 15-17). The ALJ concluded that through the date last insured Plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work, but that she was not able to perform past relevant work. (TR 17-21). Because there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act. (TR 21-22).

## VI.    LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the

Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed

disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.    Analysis**

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility and formulated a hypothetical that did not accurately portray Plaintiff in all relevant aspects. An ALJ's findings as to the credibility of the claimant are entitled to great deference if supported by substantial evidence. *Walters,* 127 F.3d at 531. Despite deference due, the ALJ's credibility determination must contain "specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In assessing a claimant's credibility, the ALJ must consider the entire case record, including the objective medical evidence and evidence of: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. § 404.1529(c)(3);

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

If the decision is made that the claimant does not retain the capacity to perform past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. The Commissioner may meet this burden by relying on the testimony of a VE in response to a hypothetical question, if the hypothetical question accurately portrays the claimant's physical and mental impairments. *Varley*, 820 F.2d at 779. A response to a flawed hypothetical does not constitute substantial evidence. A hypothetical is not flawed if it is supported by the record and incorporates those limitations the ALJ finds credible. *Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ found that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. (TR 18). The ALJ cited Plaintiff's physical examinations, noting that Plaintiff's right shoulder surgeries were mostly complete prior to 1997 or shortly after the alleged onset date. With respect to Plaintiff's left shoulder, the ALJ noted that Plaintiff reported a significant range of motion limitation in her left shoulder only since July 2000, and had reported a ninety percent improvement after her May 2001 shoulder manipulation and injection. The ALJ also found that limitations due to Plaintiff's heart attack and stent placement were not justified beyond what was accounted for in the RFC.

The ALJ observed that by her own admissions Plaintiff could drive a car prior to her date last insured, shop, read, and write. Plaintiff's statements that she could not open bottles and could only hold a telephone and write for limited periods of time were not supported by any evidence showing that she had an impairment in her ability to do fine and gross manipulation. During her

treatment Plaintiff did not complain of fatigue or side effects from medications she was taking, and in fact reported that she was not experiencing excessive fatigue, despite her claims at the hearing of extreme fatigue and concentration deficits related to medication.

The ALJ observed that Plaintiff declined physical therapy just prior to her date last insured and continued to smoke cigarettes despite her heart disease and repeated advice to stop smoking. Plaintiff argues that the ALJ erred in considering this information because Plaintiff allegedly declined physical therapy because she had been exercising for two months without improvement. Yet it was not improper for the ALJ to consider Plaintiff's failure to pursue physical therapy just prior to her date last insured when the records suggest that Plaintiff had achieved positive results in the past by engaging in formal physical therapy in conjunction with other treatment options. In assessing Plaintiff's credibility, the ALJ applied the proper legal standard and gave legitimate, record supported reasons for discounting Plaintiff's limiting statements. The Court should not disturb the ALJ's credibility assessment.

Next, the ALJ incorporated Plaintiff's limitations related to her shoulder pain and heart condition in the RFC, reflecting a limited range of sedentary work, with no overhead reaching, frequent but not constant reaching at or below shoulder level, occasional push/pull, occasional postural activities, and limitations in environmental exposures. The ALJ properly incorporated the limitations she accepted as credible in the hypothetical question to the VE and included restrictions consistent with Plaintiff's limitations. The VE then testified that there were significant jobs in the national economy that Plaintiff would be able to perform. Based on a thorough review of the record and briefs, the Court finds that the ALJ's decision to deny benefits is supported by substantial evidence.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 23, 2012            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 23, 2012                s/ Lisa C. Bartlett
                                                        Case Manager